**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| REBEKAH HOLENCHIK,<br><br>Plaintiff,<br><br>v.<br><br>MOUNT NITTANY MEDICAL CENTER,<br>Defendant. | CIVIL ACTION NO. 4:24-CV-01318<br><br>(MEHALCHICK, J.) |

**MEMORANDUM**

Plaintiff Rebekah Holenchik ("Holenchik") initiated this action on August 5, 2024, by filing a complaint against Defendant Mount Nittany Medical Center ("Mount Nittany"). (Doc. 1). Before the Court is Mount Nittany's motion for summary judgment. (Doc. 15). For the reasons provided herein, the Court denies Mount Nittany's motion.

## I. BACKGROUND AND PROCEDURAL HISTORY

The following background is taken from the parties' statements of material facts and responses thereto.[1] (Doc. 16; Doc. 21). Mount Nittany is an acute care hospital in State College, Pennsylvania. (Doc. 16, ¶ 1; Doc. 21, ¶ 1). On June 15, 2015, Mount Nittany hired Holenchik as an occupational therapist. (Doc. 16, ¶ 2; Doc. 21, ¶ 2). While employed at Mount Nittany, Holenchik reported to Emidio Krupa ("Krupa"), Manager of Rehabilitation Services. (Doc. 16, ¶ 4, Doc. 21, ¶ 4). According to Mount Nittany, its Attendance Policy requires employees to report and be physically prepared to start work no later than their

[1] Pursuant to Local Rule 56.1, the Court accepts as true all undisputed material facts supported by the record. Where the record evinces a disputed fact, the Court will take notice. The facts have been taken in the light most favorable to Holenchik.

scheduled start time, which is determined by the employee's supervisor. (Doc. 16, ¶ 5). Mount Nittany asserts that its Timekeeping Policy requires employees exempt from the overtime requirements of the Fair Labor Standards Act to clock-in once per shift to ensure accurate payment of wages. (Doc. 16, ¶ 6). Mount Nittany further contends that its Services Policy requires occupational therapists to prioritize patients in need of an evaluation to determine if they are prepared to be discharged from the hospital. (Doc. 16, ¶ 7).

According to Mount Nittany, Holenchik was required to arrive at work at 7:00 a.m. to sort new occupational therapy orders before other occupational therapists arrived at 7:30 a.m.; however, from May to June 2022, Krupa found that Holenchik was often not at her desk at 7:00 a.m. (Doc. 16, ¶¶ 11-13). Holenchik counters that she was not required to be working between 7:00 and 7:30, but rather often arrived early with permission because her carpool driver would drop her off before 7:30 a.m., her official start time. (Doc. 21, ¶¶ 11-13). Mount Nittany asserts that there was a forty-one-minute gap between the time Holenchik would swipe in and log into her computer system to work versus the normal fifteen minute gap most employees had, but Holenchik questions the accuracy of that time frame. (Doc. 16, ¶¶ 18-19; Doc. 21, ¶¶ 18-19). Mount Nittany represents that its swipe records show that after Holenchik swiped into work, she would swipe into the employee gym. (Doc. 16, ¶¶ 26-27).

Holenchik requested Family Medical Leave Act ("FMLA") leave between June 3, 2022, and June 17, 2022, which Mount Nittany approved. (Doc. 16, ¶ 21; Doc. 21, ¶ 21). On June 17, 2022, Holenchik requested to extend her FMLA leave through June 24, 2022, and Mount Nittany approved the request. (Doc. 16, ¶ 24; Doc. 21, ¶ 24). On June 25, 2022, Holenchik provided Mount Nittany with a doctor's note stating that she was able to return to work on June 25, 2022. (Doc. 16, ¶ 25, Doc. 21, ¶ 25). On June 27, 2022, Krupa and Wilfred

"Jay" Hoover ("Hoover"), Mount Nittany's Director of Ancillary Services, and discussed Holenchik's alleged failure to work between 7:00 a.m. and 7:30 a.m. (Doc. 16, ¶¶ 28-29; Doc. 21, ¶¶ 28-29).

The day before Holenchik went on leave, Krupa talked to Holenchik about her not beginning work at 7:00 a.m. (Doc. 16, ¶ 13, Doc. 21, ¶ 13). Holenchik testified that she told Krupa that her start time was 7:30 a.m. (Doc. 21, ¶ 13). Mount Nittany asserts that it conducted an investigation which determined that Holenchik was required to clock in at 7:00 a.m. to begin sorting orders but instead was going to the employee gym between 7:00 a.m. and 7:30. a.m. (Doc. 16, ¶¶ 37-42). Mount Nittany further asserts that Drew Brungard ("Brungard"), Mount Nittany's Director of Human Resources, recommended Krupa begin providing Holenchik with additional coaching as a result of her failure to do work between 7:00 a.m. and 7:30 a.m. (Doc. 16, ¶¶ 23, 37). Holenchik disputes the validity of Mount Nittany's claims and contends that she started work at her scheduled start time of 7:30 and only arrived earlier and sometimes began work prior to 7:30 due to her carpool arrangements. (Doc. 21, ¶¶ 11, 13).

Separately, on June 26, 2022, Kristy Brown ("Brown"), a speech pathologist, called Brungard. (Doc. 16, ¶ 44; Doc. 21, ¶ 44). According to Mount Nittany, Brown explained that Holenchik listened to a voicemail message from a provider requesting an evaluation for a patient to be discharged from the hospital and that Holenchik responded "I have my eight patients for the day," disregarded the patient, and deleted the voicemail without arranging for the patient to be evaluated. (Doc. 16, ¶¶ 45-46). Holenchik disputes this assertion and avers that the Court should disregard it because it is based on impermissible hearsay. (Doc. 21, ¶¶ 45-46). On June 27, 2022, Brungard met with Krupa and Hoover to discuss the incident. (Doc.

16, ¶ 48; Doc. 21, ¶ 48). Mount Nittany asserts it investigated the incident and determined that Holenchik violated its policies. (Doc. 16, ¶¶ 50-57). Mount Nittany terminated Holenchik on August 5, 2022. (Doc. 16, ¶ 59; Doc. 21, ¶ 59).

Holenchik's complaint alleges that Mount Nittany is liable for retaliation under the FMLA. (Doc. 1, ¶¶ 41-47). On December 18, 2025, Mount Nittany filed a motion for summary judgment, statement of facts, accompanying exhibits, and brief in support. (Doc. 15; Doc. 16; Doc. 17). On February 9, 2026, Holenchik filed an answer to statement of facts and brief in opposition. (Doc. 21; Doc. 22). On February 23, 2026, Holenchik filed a reply brief. (Doc. 23). Accordingly, the motion for summary judgment is now ripe and ready for disposition.

## II. Motion for Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994). However, a party opposing a summary judgment motion must comply with Local Rule 56.1, which specifically directs the oppositional party to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed

by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted." *See* M.D. Pa. L.R. 56.1.

A federal court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 278 (3d Cir. 2000). In deciding a motion for summary judgment, the court's function is not to make credibility determinations, weigh evidence, or draw inferences from the facts. *Anderson*, 477 U.S. at 249. Rather, the court must simply "determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion," and demonstrating the absence of a genuine dispute of any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant makes such a showing, the non-movant must go beyond the pleadings with affidavits or declarations, answers to interrogatories, or the like to demonstrate specific material facts which give rise to a genuine issue. Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 324. The non-movant must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. Furthermore, mere conclusory allegations and self-serving testimony, whether made in the complaint or a sworn statement, cannot be used to obtain or avoid summary judgment when uncorroborated and contradicted by other evidence of record. *See Lujan v. Nat'l Wildlife*

*Fed'n*, 497 U.S. 871, 888 (1990); *see also Thomas v. Delaware State Univ.*, 626 F. App'x 384, 389 n.6 (3d Cir. 2015) (not precedential) ("[U]nsupported deposition testimony, which is contradicted by the record, is insufficient to defeat summary judgment."); *Nat'l Labor Rel. Bd. v. FES*, 301 F.3d 83, 95 (3d Cir. 2002) ("[The plaintiff's] testimony. . . amounts to an unsupported, conclusory assertion, which we have held is inadequate to satisfy the movant's burden of proof on summary judgment").

## III. Discussion

The complaint only has one count in which Holenchik alleges that Mount Nittany is liable for retaliation under the FMLA. (Doc. 1, ¶¶ 41-47). Mount Nittany avers it is entitled to summary judgment because 1) Holenchik fails to present evidence establishing a *prima facie* case of FMLA retaliation and 2) even if Holenchik did present such evidence, Mount Nittany had non-retaliatory reasons for disciplining and firing Holenchik which Holenchik cannot show were pretextual. (Doc. 17, at 12-23).

The FMLA provides that "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period" because of, amongst other qualifying circumstances, "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C.A. § 2612(a)(1). A defendant may be liable under the FMLA for retaliating against a plaintiff for requesting FMLA leave, and retaliation claims are analyzed under the *McDonnell Douglas* burden shifting standard.[2] *See*

---

[2] The *McDonnell Douglas* standard was first established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, in which the Court held that when analyzing discriminatory hiring claims, courts first must consider whether a plaintiff has established a *prima facie* case that an employer's decision not to hire them was discriminatory. 411 U.S. 792, 802 (1973), *holding modified by Hazen Paper Co. v. Biggins*, 507 U.S. 604, 113 S. Ct. 1701 (1993). The Court further found that once a plaintiff establishes a *prima facie* case, the burden shifts to

*Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 302 (3d Cir. 2012); *see also* *Wilson v. Aerotek, Inc.*, 854 F. App'x 430, 433 (3d Cir. 2021) (nonprecedential).Under the *McDonnell Douglas* standard, the plaintiff must first make a *prima facie* case by showing "(1) he invoked his right to FMLA-qualifying leave, (2) he suffered an adverse employment decision, and (3) the adverse action was causally related to his invocation of rights." *Wilson*, 854 F. App'x at 433. Once the plaintiff "establishes a *prima facie* case, the burden shifts to the defendant to provide evidence of a legitimate non-discriminatory reason for the adverse action." *Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 256 (3d Cir. 2014). If the defendant does so, the burden shifts again to the plaintiff to demonstrate that the defendant's proffered reason for termination is pretextual. *See* *Budhun*, 765 F.3d at 256.

### A. Holenchik Establishes a *Prima Facie* Case of FMLA Retaliation.

Mount Nittany argues that Holenchik fails to establish a *prima facie* case because she does not show an adverse action casually linked to her FMLA leave. (Doc. 17, at 14-21). According to Mount Nittany, Holenchik claims that Mount Nittany disciplining her for being late and terminating her were both adverse actions, but only the termination constitutes an adverse action. (Doc. 17, at 13-14). Mount Nittany further avers that Holenchik fails to present evidence that either the discipline or termination were casually related to Holenchik's invocation of her FMLA rights. (Doc. 17, at 14-21). Holenchik counters that a reasonable jury could conclude that Mount Nittany terminated her for taking FMLA leave because

---

the employer to propose a non-discriminatory reason for its decision not to hire the plaintiff. *McDonnell Douglas Corp.*, 411 U.S. at 802-03. The Court concluded that if the employer establishes a non-discriminatory reason for not hiring the plaintiff, the burden shifts back to the plaintiff to establish that the employer's proposed non-discriminatory reason is pretextual or "discriminatory in its application." *McDonnell Douglas Corp.*, 411 U.S. at 807.

shortly after she took her leave, Mount Nittany subjected her to a pattern of antagonism before terminating her. (Doc. 22, at 10-15).

"In order to meet the adverse employment action prong of the *prima facie* case, a plaintiff must demonstrate 'a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Hair v. Fayette Cnty. of Pennsylvania*, 265 F. Supp. 3d 544, 566 (W.D. Pa. 2017) (quoting *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)). Termination is an adverse action, however, lesser penalties such as suspension, changes to work schedules, reassignment may also constitute adverse actions. *See Budhun*, 765 F.3d at 257-58. "To demonstrate a causal connection, a plaintiff generally must show 'either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link.'" *Budhun*, 765 F.3d at 258 (quoting *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007)).

There are circumstances in which the timing of a termination alone can establish a *prima facie* case. *See Lichtenstein*, 691 F.3d at 307 (noting that a plaintiff being terminated seven days after requesting FMLA leave established a *prima facie* case). However, a plaintiff may also establish causation through a pattern of antagonism by presenting evidence that after the plaintiff took FMLA leave, the defendant subjected them to frivolous investigations, harsher treatment, or additional discipline in the weeks or months leading to their eventual termination. *See Branch v. Temple Univ.*, 554 F. Supp. 3d 642, 663-64 (E.D. Pa. 2021) (finding a plaintiff established causation by presenting evidence that after the plaintiff returned from sick leave, the defendant subjected them to unwarranted investigations and excessive

discipline before firing them); *see also Miller v. Aramark Healthcare Support Servs.*, 555 F. Supp. 2d 463, 470-71 (D. Del. 2008) (finding that a plaintiff established causation by presenting evidence that in the month and a half after the plaintiff returned from FMLA leave, the defendant began to subject them to excessive discipline and then terminated them); *see also Peticca v. The Roman Catholic Diocese of Harrisburg*, No. 1:23-CV-02158, 2026 WL 735001, at *12 (M.D. Pa. Mar. 16, 2026) (finding that a plaintiff established a *prima facie* case of retaliation by presenting evidence that after the plaintiff took FMLA leave, their employer subjected them to harsher treatment and additional discipline in the two months leading to their termination). Establishing a *prima facie* case under the *McDonnell Douglas* standard is not an onerous burden. *L. L. v. Evesham Twp. Bd. of Educ.*, 710 F. App'x 545, 549 (3d Cir. 2017) (nonprecedential) (noting that in general, the *prima facie* stage of the *McDonnell Douglas* standard is not intended to be onerous); *see also Polen v. Pottstown Hosp. - Tower Health*, No. CV 18-4025, 2019 WL 6841496, at *5 (E.D. Pa. Dec. 16, 2019) (noting the same in the context of an FMLA retaliation claim).

The Court finds that Holenchik establishes a *prima facie* case of retaliation. The parties agree that Holenchik took FMLA leave on June 3, 2022, and that her doctor cleared her to return to work June 25, 2022. (Doc. 16, ¶¶ 21, 24-25; Doc. 21, ¶¶ 21, 24-25). Holenchik presents evidence that on June 27, 2022, shortly after her return, she received a formal disciplinary notice requiring her to attend coaching. (Doc. 16-22). Holenchik also testified that she had to meet with Krupa, Hoover, and a human resources representative on June 27, 2022, to discuss the disciplinary notice. (Doc. 16-4, at 15). The disciplinary notice related to Holenchik allegedly not working between 7:00 a.m. and 7:30 a.m. (Doc. 16-22). Holenchik further presents internal disciplinary documents and emails between Mount Nittany officials

showing that between June 26, and 27, 2022, immediately after Holenchik returned from leave, Mount Nittany launched another disciplinary investigation into Holenchik which ultimately resulted in Mount Nittany terminating her on August 5, 2022, less than two months after she returned from FMLA leave. (Doc. 16-22; Doc. 16-27). A reasonable jury could determine that Mount Nittany conducting multiple investigations and disciplinary proceedings against Holenchik immediately after she returned from FMLA leave constitutes a pattern of antagonism and infer causation. *See Branch*, 554 F. Supp. 3d at 663-64; *see also Miller*, 555 F. Supp. 2d at 470-71; *see also Peticca*, 2026 WL 735001, at *12.

Mount Nittany avers that a reasonable jury could not conclude the disciplinary notice contributed to a pattern of antagonism because Krupa began investigating Holenchik allegedly starting work late before she took FMLA leave. (Doc. 23, at 6). However, Holenchik presents email records showing that much of Krupa's investigation into Holenchik's alleged lateness and discussions with Mount Nittany human resources officials about the alleged lateness occurred while Holenchik was on FMLA leave. (Doc. 16-12; Doc. 16-13, at 2-3). Holenchik also presents her disciplinary notice which shows Mount Nittany disciplined her shortly after she returned from leave. (Doc. 16-22). Further, it is undisputed that the second investigation into Holenchik began after she returned from FMLA leave. (Doc. 16, ¶¶ 44, 50; Doc. 21, ¶¶ 44, 50). A reasonable jury could agree with Mount Nittany that Mount Nittany did not subject Holenchik to a pattern of antagonism. (Doc. 22, at 6). However, there is a genuine dispute of material fact regarding causation because a reasonable jury could also conclude that Mount Nittany's investigations and discipline constituted a pattern of antagonism. *See Branch*, 554 F. Supp. 3d at 663-64; *see also Miller*, 555 F. Supp. 2d at 470-71; *see also Peticca*, 2026 WL 735001, at *12. Thus, the Court finds that, for purposes of this motion,

Holenchik establishes a *prima facie* case and the burden shifts to Mount Nittany to provide a legitimate, non-retaliatory reason for termination. *See Budhun*, 765 F.3d at 256.

B. <u>THERE IS A GENUINE DISPUTE OF MATERIAL FACT REGARDING WHETHER MOUNT NITTANY'S PROFFERED REASON FOR TERMINATION WAS PRETEXTUAL.</u>

According to Mount Nittany, it had legitimate reasons for disciplining and eventually terminating Holenchik because its investigations found both that she was going to the gym instead of starting work at 7:00 a.m. and that she "intentionally delayed patient care in violation of [Mount Nittany's] Priority Services Policy." (Doc. 17, at 18-19, 22-23). An employee violating patient treatment policies or repeatedly being late to start work are both legitimate reasons for termination. *See West v. Northampton Clinic Co.*, LLC, 783 F. App'x 118, 122 (3d Cir. 2019) (nonprecedential) (finding that a plaintiff violating patient treatment policies constituted a legitimate reason for termination); *see also Haskins v. Christiana Care Health Servs.*, 701 F. Supp. 2d 623, 631 (D. Del. 2010) (noting that tardiness is a legitimate reason for termination). Thus, Mount Nittany presents a legitimate, nondiscriminatory basis for termination and the burden shifts back to Holenchik to show that Mount Nittany's proffered reason is pretextual. *See Budhun*, 765 F.3d at 256.

"In order to demonstrate that [a defendant's] proffered justification for terminating [the plaintiff] is merely pretextual, [the plaintiff] 'must point to some evidence, direct or circumstantial, from which a factfinder could reasonably . . . disbelieve the employer's articulated legitimate reasons.'" *Lichtenstein*, 691 F.3d at 309–10 (quoting *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994)). It is insufficient for a plaintiff to demonstrate that the proffered reason for termination "was wrong or mistaken" but rather, the plaintiff "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could

rationally find them 'unworthy of credence' and hence infer that the employer was not actually motivated by its proffered nondiscriminatory reason." *Parker v. Verizon Pennsylvania, Inc.*, 309 F. App'x 551, 556 (3d Cir. 2009) (nonprecedential) (quoting *Fuentes*, 32 F.3d at 765). A plaintiff may create a genuine dispute of material fact regarding pretext by presenting evidence of contradictions in the defendant's account of the plaintiff's alleged offense and by presenting evidence that the plaintiff did not commit the misconduct the defendant accused them of committing. *See Lichtenstein*, 691 F.3d at 310-12 (finding a genuine dispute of fact where a plaintiff presented evidence that the defendant contradicted themselves regarding when they made the decision to fire the plaintiff and when they learned about the alleged misconduct); *see also Janovsky v. UPMC Presbyterian*, No. CV 21-615, 2023 WL 4949903, at *7 (W.D. Pa. Aug. 3, 2023) (finding that a plaintiff created a genuine dispute of material fact by presenting evidence of inconsistencies and inaccurate statements relating to the defendant's proffered reasons for termination). A plaintiff may further create a genuine dispute of fact regarding pretext by presenting evidence that inconsistencies in the defendant's proffered reasons for termination coincided with the defendant subjecting the plaintiff to a pattern of antagonism shortly after they returned from FMLA leave. *See Branch*, 554 F. Supp. 3d at 664 (finding a plaintiff established pretext by presenting evidence that 1) shortly after the plaintiff returned from FMLA leave, the defendant subjected them a "witch hunt," and 2) the defendant's account of the disciplinary investigations into the plaintiff had internal contradictions); *see also May v. PNC Bank*, 434 F. Supp. 3d 284, 301 (E.D. Pa. 2020) (finding that a plaintiff established pretext by presenting 1) inconsistencies in the defendant's account of plaintiff's termination and 2) evidence that the defendant subjected the plaintiff to a pattern of antagonism immediately after they returned from FMLA leave).

Making all inferences in favor of Holenchik, the Court finds that there is a genuine dispute of material fact regarding pretext. As discussed *supra* Section III.A, although Mount Nittany presents evidence that it began its investigation into Holenchik's alleged lateness before Holenchik's FMLA leave, Holenchik presents evidence from which a reasonable jury could conclude that 1) Krupa ramped up his investigation while Holenchik was on FMLA leave, 2) Mount Nittany disciplined Holenchik for the first time shortly after she returned from FMLA leave, and 3) she was not late because her start time was 7:30 a.m. (Doc. 16-4, at 11; Doc. 16-12; Doc. 16-13, at 2-3; Doc. 16-22). Relatedly, Mount Nittany presents evidence that it was justified in terminating Holenchik because on June 26, 2026, Holenchik listened to a voicemail from a provider requesting an occupational therapist evaluate a patient, deleted that voicemail, and refused to arrange for the patient to be evaluated.[3] (Doc. 16, ¶¶ 44-53; Doc. 17, at 22-23). However, Holenchik presents evidence from which a reasonable jury could conclude that this account of events lacks credibility.

Holenchik testified that she did not ignore the voicemail, but rather, was unable to see any additional patients due her caseload for that day. (Doc. 16-4, at 7). Holenchik further

[3] Defendants support this assertion with a declaration from Brungard stating that Brown told him about this incident and that Hoppeann Wahlmark and Dan Beers were witnesses to the incident. (Doc. 16-23, at 3). Holenchik avers that the Court may not consider Brungard's declaration because it contains impermissible hearsay. (Doc. 21, ¶¶ 45-47). A court may consider hearsay statements in a motion for summary judgment if the party presenting the statement identifies the declarant as a witness who can be called at trial. *See Fraternal Ord. of Police, Lodge 1 v. City of Camden*, 842 F.3d 231, 238 (3d Cir. 2016) (finding a district court erred by refusing to consider a hearsay statement while evaluating a motion for summary judgment because the plaintiff identified the declarant as a potential witness at trial); *see also Mill v. Nationwide Prop. & Cas. Ins. Co.*, No. 4:23-CV-00905, 2024 WL 4900026, at *2 (M.D. Pa. Nov. 26, 2024) (considering a hearsay statement because the plaintiff could call the declarant to testify at trial). The Court need not decide whether Brungard's declaration contains hearsay because Mount Nittany indicates that it may call all of the relevant declarants at trial. (Doc. 23, at 12); *see Fraternal Ord. of Police, Lodge 1*, 842 F.3d at 238; *see also Mill*, 2024 WL 4900026, at *2.

testified that that her colleagues informed her that another occupation therapist would evaluate the patient. (Doc. 16-4, at 7). Holenchik also presents inconsistencies in Mount Nittany's account of the incident. Mount Nittany presents a declaration from Brungard that he learned about this alleged incident on June 26, 2022, he reported it to management, including Krupa, on June 27, 2022, and management then began an investigation. (Doc. 16-23, ¶¶ 5-10). However, Holenchik's contemporaneous termination document states that Brungard did not report the incident to management until July 5, 2022. (Doc. 16-27, at 2-3). Mount Nittany launched this investigation shortly after Holenchik returned from FMLA leave. (Doc. 16, ¶¶ 25, 50; Doc. 21, ¶¶ 25, 50). A reasonable jury could conclude that Mount Nittany investigated and terminated Holenchik for justifiable reasons. However, a reasonable jury could also find that the investigations were pretextual because they were part of a pattern of antagonism and lack credibility in light of Holenchik's testimony, the temporal proximity between Holenchik's FMLA leave and the investigations, and inconsistencies in Mount Nittany's account of the investigations. *See Branch*, 554 F. Supp. 3d at 664; *see also May v. PNC Bank*, 434 F. Supp. 3d 284, 301. The Court finds that a genuine dispute of material fact prevents summary judgment and **DENIES** Mount Nittany's motion for summary judgment. (Doc. 15).

## IV. CONCLUSION

For the foregoing reasons, Mount Nittany's motion for summary judgment is **DENIED**. (Doc. 15). An appropriate Order follows.

**Dated: August 3, 2026**

s/ Karoline Mehalchick

**KAROLINE MEHALCHICK**
**United States District Judge**